POSNER, Circuit Judge.
Before us is an appeal by the defendant (Waupaca for short) in a class action suit brought against it in a federal district court in Wisconsin on behalf of a number of the workers that it employs in six foundries that manufacture ductile and gray cast iron parts for use in the automotive and other industries. Four of the six foundries are located in Wisconsin, and the remaining two in Indiana and Tennessee. The suit alleges that Waupaca violated the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., by its longstanding practice of not treating the time that its foundry workers spend changing clothes and showering on-site at the end of a foundry shift to be compensable “work” time. The Act entitles employees to a minimum wage for each hour they’re “employ[ed]” and a premium wage (1.5 times their regular wage) for each hour they are “employ[ed]” beyond 40 hours in one work week. Id. §§ 206(a), 207(a). The Act defines “employ” to mean “to suffer or permit to work,” id. § 203(g), but does not define “work.” But an employee’s activities at the beginning and end of a work shift may qualify as compensable “work” if necessitated by the nature of the work even if they are not required by a workplace policy, DeKeyser v. Thyssenkrupp Waupaca, Inc., 735 F.3d 568, 570-71 (7th Cir. 2013) (DeKeyser I)—in other words if the activities are “an integral and indispensable part of the principal activities for which [the workers] are employed.” Steiner v. Mitchell, 350 U.S. 247, 256, 76 S.Ct. 330, 100 L.Ed. 267 (1956).
The plaintiffs allege that they end their shifts covered in a layer of “foundry dust,” which can irritate the skin and cause lung disease if inhaled. Changing clothes and showering immediately after a shift, they argue, is indispensable to reducing the risk that foundry work poses to their health. The plaintiffs have also alleged violations of Wisconsin wage law.
The Fair Labor Standards Act authorizes collective actions by employees on behalf of “similarly situated” employees. 29 U.S.C. § 216(b). Unlike class actions under Fed. R. Civ. P. 23, collective actions under the FLSA (which for the sake of simplicity we’ll refer to as class actions—they are very similar to the more familiar Rule 23 class actions) require would-be members of the collectivity to opt in to (i.e., voluntarily join) the class. See Espenscheid v. Direct-Sat USA LLC, 705 F.3d 770, 771-72 (7th Cir. 2013). The district judge in this case ruled that he would “conditionally certify” the class since the plaintiffs showed a “reasonable basis” for believing that all the class members were similarly situated— and then, after discovery, upon a motion by the defendant for decertification the judge would determine whether the plaintiffs who had opted in were, in fact, similarly situated to the existing class members.
After the district court in 2008 conditionally certified the plaintiffs’ FLSA collective-action class (consisting of current and former Waupaca foundry employees at any of the company’s six foundries), several hundred current and former Waupaca employees from all three states opted in to *921 the lawsuit. Waupaca responded by moving to decertify the class. At the same time the plaintiffs, deciding to proceed with only Waupaca’s Wisconsin employees, moved to certify a Rule 23 class just for their Wisconsin state-law claims and so didn’t oppose the decertification of those Indiana and Tennessee employees who had previously opted into the FSLA class. The district judge agreed that a class action on behalf of just the Wisconsin plaintiffs made sense and certified a class accordingly, denied Waupaca’s request to decertify the entire FSLA class, and divided the FLSA class—which included employees from Indiana and Tennessee as well as from Wisconsin—into three subclasses, one for each state. The judge then severed the claims of the Indiana and Tennessee plaintiffs and transferred them to district courts in their respective states, on the ground that they could be more efficiently evaluated by such courts. Although this was not a final order, Waupaca has appealed to us from it under Rule 23(f), which permits interlocutory appeals of class-certification decisions.
We analyze the two classes together. See Espenscheid v. DirectSat USA, LLC, supra, 705 F.3d at 772. The plaintiffs argue that Waupaca should be ordered to give the class members overtime pay and back pay for the time they have spent or are spending on decontamination, as by changing out of their work clothing and showering in the workplace locker rooms immediately after their shifts. Not only does the defendant not give these workers overtime pay (that is, pay equal to 1.5 times of their normal pay) for the time they spend on decontamination, it pays them nothing for this time; it doesn’t even record the time, since it considers it time spent in noncompensable activity. Although it approves of the workers’ taking the safety measures we’ve mentioned, it refuses to pay them for the time they spend taking them.
Originally the district judge held that it was not a violation of the Fair Labor Standards Act for Waupaca not to pay the workers for that time and so granted summary judgment in favor of the defendant. The plaintiffs appealed, however, and we reversed and remanded in DeKeyser I, supra, 735 F.3d at 572, pointing out that decontamination might indeed be required by the “nature of [the employees’] work,” and that the district court had erred when it “ignored the ‘sharp dispute’ in the evidence as to the health effects of chemical exposure at Waupaca’s foundries and the impact, if any, that showering and changing clothes would have on Waupaca workers.” Id. at 570-71.
On remand the district judge ruled that the plaintiffs would prevail if they “convince the .finder of fact that changing clothes and showering at work will significantly reduce the risk to the health of the employee.”
Waupaca contends, though in tension with its encouraging all its foundry workers to take the precautions noted, that the plaintiffs haven’t met Rule 23’s requirement of identifying questions of fact common to the class because these precautions do not reduce the risks of foundry work to the health of all the workers by the same amount. Waupaca insists that to prevail a plaintiff must provide an individualized analysis of the chemicals that he is exposed to in the foundry and provide information about his personal medical background that will demonstrate that changing clothes and showering on-site would indeed significantly reduce the risk to his health.
The company describes the plaintiffs’ evidence as “evidence demonstrating that [the plaintiffs’] claims could not be proven individually.” But that misunderstands both the plaintiffs’ evidence and their evi-dentiary burden. Back in the district court *922 on remand from the earlier decision by our court, the plaintiffs hired as an expert witness a certified industrial hygienist named Thomas Armstrong. He presented evidence that changing out of one’s work clothes and showering immediately after the standard 8-hour workday in a foundry reduce an employee’s “foundry dust”- skin contamination twelve-fold and by doing so considerably reduce the risk that such contamination poses to an employee’s health. He opined that because foundry dust is distributed throughout the plant any foundry worker could reduce his risk by changing and showering immediately at the end of his shift. Dr. Armstrong acknowledged that there wasn’t enough information to quantify the precise risks associated with changing and showering on-site, as opposed to at home (particularly because ethics rules forbid testing of known carcinogens on humans), but emphasized the reduction in risk associated with using a “dirty side/clean side” shower and locker-room system, by which he meant a configuration that allows employees to shed their work clothes on one side of the shower facility, shower in the middle, and dress in street clothes on the other side. Such a system could hardly be replicated in the household bathrooms of Waupaca employees, and it would reduce the risk of employees’ carrying contaminants such as silica dust and manganese into their vehicles and homes, where they would endanger themselves and their families, especially children and elders.
Waupaca’s rebuttal, hinted at earlier, is that the health risks must vary across workers because of different exposures to chemicals and different medical histories of different workers and that as a result some workers may derive no significant health benefits from showering and changing clothes right after the end of the work day in the foundry, and therefore should not be entitled to be paid for the time they spend doing so. But the company has not identified any such workers. Nor has it challenged Dr. Armstrong’s expert testimony as inadmissible under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and his report implies that the reduction in risk from conducting the decontamination activities at work would dwarf any variation in risk based on particular individual exposures or medical history. Whether a jury will credit Dr. Armstrong’s report is a separate question, but the district court did not err in concluding that the plaintiffs have produced common evidence tending to prove their common assertion, as Rule 23 and section 216(b) require.
One more issue remains to be considered. Waupaca argues that the district court erred by severing the FLSA claims of the plaintiffs from Indiana and Tennessee who had opted in to the lawsuit and transferring those claims to their respective home districts. Although the district court’s plan to sever and transfer was laid out in the district court’s class certification order, Rule 23(f) appeals are limited to “those issues related to [the] class certification decision.” Andrews v. Chevy Chase Bank, 545 F.3d 570, 576 n. 2 (7th Cir. 2008). It’s true that the non-Wisconsin plaintiffs had been conditionally certified, so in a sense the district court “decerti-fied” them from the FLSA class. But Wau-paca doesn’t challenge that aspect of the order by arguing that the Indiana and Tennessee plaintiffs should be added back into the FSLA class; it simply wants the claims of the non-Wisconsin plaintiffs dismissed. The district court’s plan to sever and transfer the non-Wisconsin plaintiffs to their home districts does not bear on the soundness of the class certification decision for the Wisconsin plaintiffs, so Wau-paca cannot challenge it on a Rule 23(f) appeal, and did not obtain certification to *923 appeal under 28 U.S.C. § 1292(b). See Union Oil Co. of California v. John Brown E&C, 121 F.3d 305, 311 (7th Cir. 1997). In any event there was nothing wrong with what the district court did—28 U.S.C. § 1404(a) gives a district court discretion to transfer a civil action to any other district or division where it might have been brought if the transfer is “for the convenience of parties and witnesses, [and] in the interest of justice.”
Unfortunately the end of this protracted litigation, which began in June 2008—al-most nine years ago—is not yet in sight. The district court has certified the plaintiff class, now limited to Wisconsin plaintiffs, under Rule 23 and section 216(b), but has yet to determine whether the time spent changing clothes and showering is indeed “work” time compensable under the FLSA or, if it is, what damages the members of the plaintiff class are entitled to, to compensate them for Waupaca’s failure to have paid them for that time. Those determinations presumably will require a trial. For now we simply affirm the district court’s certification decision.
Affirmed.